184

(No. 87-CC-2150—)

WARREN HARRIS, Claimant, *v.* THE STATE OF ILLINOIS,
Respondent.

*Opinion filed February 22, 1989.*

*Order filed May 25, 1989.*

WARREN HARRIS, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ and KIMBERLY DAHLEN, Assistant Attorneys General, of counsel), for Respondent.

## OPINION

MONTANA, C.J.

Claimant filed his claim seeking damages against the Illinois Department of Corrections for loss of his legal transcripts and documents on February 23, 1987. Claimant alleged that in June of 1986, when he was transferred from Joliet to Danville, the Department of Corrections inventoried his legal papers, stored them, but then lost the documents. He claimed $5,000 in damages for loss of his legal papers. The State raised an affirmative defense that a setoff against a crime victim's award for $1,652.95 must be made against any recovery by Claimant.

Trial was held before the Commissioner on November 5, 1987. The evidence consists of the transcript of evidence, Respondent's Exhibit 1, the departmental report, Claimant's Exhibit 1 through 9, and the crime victim's award order in *Howard v. State,*

32 Ill. Ct. Cl. 1020. This cause has been fully briefed by both parties.

## THE FACTS

In May of 1986, Claimant was an inmate with the Illinois Department of Corrections. Claimant was transported to Chicago to testify in Federal court and was staying at the prison in Joliet. On June 17, 1986, all of Claimant's personal property, including his legal papers, were packed for Claimant's trip to the prison in Danville, Illinois. The personal property was packed by Officer J.H. and inventoried. Claimant received the pink copy of the inventory and the yellow copy went with the property. The inventory record, Claimant's Exhibit 1, which was corroborated by the State's departmental report, shows as inventoried one transcript and one stack of legal papers.

Claimant testified his property consisted of his court transcript, one stack of legal papers in a double garbage bag, some cosmetics, and a suit and shirt.

When Claimant arrived at the Danville prison on June 18, 1986, and was called in to receive his personal property, he noticed his bag of legal papers was missing. The officials at Danville attempted to locate the legal papers, but were unsuccessful. The missing legal papers consisted of about 1300 pages of common law records. The transcript from Claimant's trial was 185 pages and he had two depositions from a prior lawsuit. One of the depositions was a copy of the original. The evidence indicated the transcript of depositions would cost $300. The Claimant testified that to replace the lost documents would cost $50 and to replace his trial transcript would cost $626.

Claimant's Exhibit 4 is the Department of Correc-

tions Review Board decision. The decision indicates the legal papers were shipped on the transfer bus but were not received at Danville. The claim was denied because there was no way the prison board could determine what was actually shipped because their employee only wrote down "1" court transcript and "1 stack" legal papers. The form used by the State had room to expand upon the nature of the personal property inventoried but was not filled out in this case by the officer.

The Claimant testified that the State lost an affidavit from a witness which he planned to use in a petition for post-conviction relief. The affidavit was part of the stack of legal papers. The witness cannot presently be located. Additionally, Claimant spent $14 in mailing to the Court of Claims.

The State brought out at the hearing that the Claimant was convicted of murder in 1977 for the killing of Ernest Ellis Howard. The lost papers were mainly related to his conviction. Both his appeal and post-conviction petition of the 1977 conviction were unsuccessful. With the assistance of counsel, Claimant filed a Federal *habeas corpus* petition in 1980. The petition was denied. His attorney had copies of some of his legal papers and his deposition. The lawyer paid for the deposition and Claimant did not have to pay for his original trial transcript as he was a poor person. He also had never purchased a record in his *habeas corpus* proceedings. The Court of Claims granted $1,652.95 to Arthur E. Howard in *Howard v. State*, 32 Ill. Ct. Cl. 1020, for the funeral expenses of Ernest Ellis Howard as a crime victim's award.

## THE LAW

The State has a duty to exercise reasonable care to

safeguard and return an inmate's property when it takes actual possession of such property, as during the course of the transfer of an inmate between penal institutions, or when the institution receipts for the property. *Lewis v. State* (1985), 38 Ill. Ct. Cl. 254; *Doubling v. State* (1976), 32 Ill. Ct. Cl. 1.

In the present case, the Claimant was transferred between penal institutions and received a receipt for his property. His trial transcript and legal papers were not returned. The loss of bailed property while in the possession of a bailee raises a presumption of negligence which the bailee must rebut by evidence of due care. (*Moore v. State* (1980), 34 Ill. Ct. Cl. 114.) The State has not rebutted the presumptions of negligence and is liable for the loss of Claimant's transcript and legal papers. There was no proof of due care.

The issue of value is more difficult. The Claimant has the burden of proving his damages or he cannot prevail. (*Rivera v. State* (1985), 38 Ill. Ct. Cl. 272.) Claimant testified that the cost to replace the depositions was $300, the cost to replace lost documents would be $50, and the cost to replace his trial transcript would be $626.

Claimant had been granted *in forma pauperis* status so it would be unlikely he would have paid for these legal papers in advance. He did provide a letter from a court reporter, Theresa M. Croteau, and a letter from the clerk of the United States District Court in support of his damage claims. The amount of the transcript of $626 is not so supported by that figure but appears reasonable for a transcript of a murder trial. (*Stephenson v. State* (1985), 37 Ill. Ct. Cl. 263.) The issue is whether the bills were reasonable, not whether they were paid or unpaid. *Lawrence v. State* (1982), 35 Ill. Ct. Cl. 709.

The State cites *Tally v. State* (1983), 35 Ill. Ct. Cl. 828, in support of their position that the Claimant has failed to show that his property was in the exclusive possession of the State. However, the findings in Claimant's Exhibit 4, the administrative review board decisions, indicate Claimant's bundle of legal material was shipped from Joliet but not received at Danville. The Claimant's property was therefore in the exclusive possession of the State. Claimant was in the process of filing a second post-conviction petition and therefore the lost documents had value to Claimant. The reasonable value to replace these documents would be $976. The Court has justified such awards at the cost to replace the transcripts. *Willis v. State* (1980), 34 Ill. Ct. Cl. 242.

However, the State argues that any recovery by Claimant must be offset by the State's prior payment to the crime victim's father. (Ill. Rev. Stat. 1985, ch. 37, par. 439.24—6.) Where the evidence in the case indicates that the Claimant is indebted to the State, then a setoff must be made. *Progos v. State* (1960), 23 Ill. Ct. Cl. 207; *Choiniere v. State* (1974), 30 Ill. Ct. Cl. 174.

The Claimant is entitled to $976 for damages, but the State is entitled to a recoupment of the entire amount towards the crime victim's payment of $1,652.95. The Crime Victims Compensation Act allows the State to be subrogated to the rights of the crime victim and to be paid back for the award. (*Hamilton v. State* (1985), 37 Ill. Ct. Cl. 452.) The Respondent properly raised this setoff in its affirmative defense and is entitled to the same. The State, in effect, has a lien for $1,652.95 and may reduce an award to recoup that amount. (*Gettis v. State* (1975), 30 Ill. Ct. Cl. 922.) Where the setoff exceeds the amount the Claimant could recover, it has been the court's practice to dismiss the claim. *Dawson v. State* (1983), 35 Ill. Ct. Cl. 874.

Accordingly, the amount due the State by the Claimant exceeds the award for the loss of the legal documents and the Claimant is denied a recovery.

Therefore, this claim is dismissed.

## ORDER

MONTANA, C.J.

Claimant has filed a motion for a new trial. The Court has carefully considered Claimant's submission. We find that it does not set forth sufficient grounds for the Court to vacate the order filed February 22, 1989.

Accordingly, Claimant's motion is denied.