(No. 87-CC-1748—

JOSHUA MOORE, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed November 29, 1989.*

JOSHUA MOORE, *pro se*, for Claimant.

NEIL F. HARTIGAN, Attorney General (SUZANNE SCHMITZ, Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

Claimant's complaint alleges that certain of his personal property was damaged by a fellow prison inmate when a guard let the other prisoner into his cell. The State, besides contesting the claim, has raised other issues. The State seeks a set-off for $600 for funeral expenses paid by the Department of Public Aid. The State also seeks a revocation of Claimant's *in forma pauperis* status.

A hearing was held before Commissioner Robert Frederick. The evidence consists of the departmental report, the supplemental departmental report, and the transcript of testimony. Both Claimant and Respondent have filed briefs and Commissioner Frederick has duly filed his report.

On September 22, 1986, while Claimant was a prison inmate at the Danville Correctional Center, he went to eat and his cell was locked behind him. All inmates have identification cards. When Claimant returned to his cell he found that his cell was open and that certain of his personal property had been damaged, namely his television set, fan, stereo and AM/FM radio.

He testified that an officer told him that he had erroneously let another inmate into Claimant's cell and he was sorry. Guards are required to receive identification before opening anyone's cell.

Claimant testified that his television set was busted, his stereo demolished, his fan had the fenders broken off and his AM/FM radio was dented and had a bent antenna, but still worked. Claimant further testified he had paid $79 for the television in 1985. He purchased the stereo in 1986 for $131 and the AM/FM radio in 1985 for $47 and had paid $15 for the fan. Testimony also indicated that Claimant earned $15 a month.

Claimant presented his claim through the prison grievance procedure. The investigation by the prison indicated that Officer Summers heard loud banging and glass breaking on September 22, 1986. Upon investigating, this officer found inmate Stokes in Claimant's cell destroying Claimant's property. The television, stereo and fan had suffered damage to the point of destruction. Inmate Stokes claimed that Claimant had hit him in the head that morning prompting the retaliation. However, there was no evidence to back inmate Stokes' claim and no officers had reported any altercation between Stokes and Claimant.

The Institutional Inquiry Board found that Correctional Officer Ellett erroneously opened Claimant's cell and let Stokes in. The Inquiry Board indicated Claimant had receipts for his property showing the purchase prices claimed. The Inquiry Board found that Claimant's grievance was well-founded and that the property was damaged due to the negligence of the correctional officer and recommended Claimant be paid $268.35. The warden overruled the Inquiry Board's recommendation.

The supplemental departmental report indicates that a Crime Victims Compensation Act award of $60 was made to Maxine Graham in cause 84-CV-0792 for funeral expenses. Arthur Graham was the victim of Claimant's voluntary manslaughter. The award also made a finding that the Department of Public Aid had paid $600 towards the victim's funeral.

This Court held in *Doubling v. State* (1976), 32 Ill. Ct. Cl. 1, that the State had a duty to exercise reasonable care to safeguard and return an inmate's property when it takes actual physical possession of such property. Various types of constructive bailments have been recognized. (*Lewis v. State* (1985), 38 Ill. Ct. Cl. 254.) However, in most cases where the property is taken from the cell of an inmate, the Court has denied the inmate's claim for damages. (*Owens v. State* (1985), 38 Ill. Ct. Cl. 150; *Edwards v. State* (1986), 38 Ill. Ct. Cl. 206.) To prevail, the inmate must prove that a guard participated in or acquiesced in the loss of property. (*Bargas v. State* (1976), 32 Ill. Ct. Cl. 99.) There is no general duty on the part of the State to safeguard an inmate's property from theft by other inmates when the property is in the inmate's cell. The State is not an insurer of an inmate's property and cannot be held responsible where other inmates engage in criminal acts directed at the property. Nor can the State in the exercise of reasonable care be expected to prevent isolated acts of pilferage in the environment of a penal institution.

The present case, however, is different from most cases involving prisoner property damaged in the cell before the Court. The usual case involves unknown perpetrators making entry to the cell by unknown means. In the present case, the perpetrator of the damage to Claimant was let into the cell in violation of

policy and apparently without checking identification by a named guard who admits his error. With this evidence, the Claimant's claim has merit and by using a five-year life on the personal property and reducing each claim of loss by one-fifth, an award could be made for $180.

However, the State had a valid claim for a set-off in the amount of $660 for the Crime Victims Compensation Act award and the Department of Public Aid funeral expense payment. (*See Drogos v. State* (1960), 23 Ill. Ct. Cl. 207; *Choinere v. State* (1974), 30 Ill. Ct. Cl. 174; *Gettis v. State* (1975), 30 Ill. Ct. Cl. 922.) Claimant's only response to the set-off claim by the State is that the award under the Crime Victims Compensation Act should not have been made for the crime of voluntary manslaughter. This Court has recognized Crime Victims Compensation Act awards where the crime was voluntary manslaughter. (*Johnson v. State* (1985), 38 Ill. Ct. Cl. 435.) Claimant's argument is not well taken.

Based on the foregoing, we find that while Claimant has a valid claim for the amount of $180, his claim must be denied because the State has a valid set-off for more than the amount the Claimant could be awarded.

It is therefore hereby ordered that this claim be, and is, denied. It is further ordered that the State' motion to revoke Claimant's *in forma pauperis* status be, and is, denied.